JOHN C. BECKER, M.D., APPELLANT, *v.* YVONNE
C. WALTHERS, RESPONDENT.

No. 7714

October 23, 1975          541 P.2d 523

*Erickson & Thorpe,* of Reno, for Appellant.

*Werchick & Werchick,* of San Francisco, Calif., and *Joseph J. Kay, Jr.,* of Reno, for Respondent.

# OPINION

*Per Curiam:*

A jury found that Dr. John Becker negligently injured Yvonne Walthers during the course of an independent medical examination and assessed her damages at $30,000. This appeal is from the judgment entered upon jury verdict. We affirm.

The independent medical examination was conducted by Dr. Becker at the request of the insurance carrier for a person against whom Mrs. Walthers had instituted an action for damages arising out of an automobile collision. Her car was struck from behind and she incurred a whiplash neck injury. She was treated conservatively by an orthopedic surgeon for about six months, but her pain and discomfort continued to persist. Consequently, a neurosurgeon was consulted, and after additional diagnostic procedures were completed, the two doctors decided upon surgery which consisted of fusing cervical levels C3–4 and C4–5. The surgery apparently was successful since her neck and arm pain disappeared. She was discharged by her doctors on July 1, 1970.

On August 21, 1970, she went to Dr. Becker's office for the aforementioned independent medical examination. Yvonne Walthers testified that during the course of that examination and while conducting a neck range of motion test, Dr. Becker twisted her neck and pushed her head downward with such force as to cause a "popping or crushing" sound, and severe pain. The doctor denied the use of excessive force.

The pain persisted, and on October 14, 1970, her doctors performed another surgical fusion at the C5–6 level. This surgery apparently was not successful, and in July 1972, a third anterior cervical fusion was performed at the level of C6–7. The last fusion seemed to cure her major complaints.

Her treating orthopedic surgeon testified that in his opinion the manner in which the independent medical examination was conducted "resulted in a subsequent nerve root irritation or compression or pain which subsequently resulted in the two following operations." Her treating neurological surgeon opined that the independent medical examination precipitated her problems, assuming, of course, that the story of that examination related by his patient was true.

The major claim of error is that counsel for the plaintiff misled the jury by certain statements he made during summation. The statements are footnoted.[1] It is urged that such statements were contrary to the law respecting the applicable standard of care.

The court instructed the jury that the doctor ". . . must possess and apply the knowledge and use the skill and care which a reasonably well qualified specialist in the same field, practicing in the same locality ordinarily would use in similar cases and circumstances. A failure to do so is a form of negligence called malpractice." The propriety of the instruction is not challenged. Thus, the jury knew the standard of care to be applied in evaluating all evidence presented to it. We view the challenged statements to be within permissible limits of summation and not necessarily in conflict with the instruction given.

The remaining claim of error, that the trial court should have granted the defendant's motion to dismiss, or his motion for a directed verdict, is denied peremptorily. There was ample evidence which, if accepted as true, would support the verdict of the jury.

Affirmed.

---

[1] "The evidence will show that in the course of this examination, that is, an examination not by one's own physician, but by another doctor designated by an insurance company, that doctor has absolutely no right whatsoever to hurt or damage the person he's examining."

". . . a physician's first responsibility in doing an examination at the request of an insurance company is to do no harm to the patient. It's not his patient and he's not doing any kind of test that has to result in harm."

". . . because the law and the facts of medicine are clear, the doctor has no right to harm at all in doing a range-of-motion test for an insurance company."

". . . the only issue in the case [is] whether Yvonne C. Walthers' neck condition was aggravated during the examination by Dr. Becker, because if you hurt someone in the course of such an examination, then it's not a properly performed examination."